[No. 186-41440-3.    Division Three.    December 22, 1970.]

THE STATE OF WASHINGTON, *on the Relation of Richard E. Ryder, Appellant,* v. THE CITY OF PASCO *et al., Respondents.*

*Don J. Clark,* for appellant.

*D. Wayne Campbell,* for respondents.

MUNSON, J.—Relator, Richard E. Ryder, appeals from an order denying a writ of mandamus in an action brought to compel defendants—the City of Pasco, the City Council of Pasco, and the Mayor of the City of Pasco—to issue an access easement for relator's property located on a limited access arterial.

The street (Lewis Street) to which relator seeks access was originally part of the Washington state highway system.[1] As a result of its limited access character, the right-of-way for ingress and egress was purchased by the State of Washington. At the time relator purchased the property he knew there was no access to Lewis Street. In 1966 the state transferred ownership of the street to the City of Pasco. In January of 1969, after an extensive study,[2] the city council passed an ordinance[3] to continue the limited access nature of the street but allow for future access should the council, in its discretion, find the issuance of easements would not interfere with or detract from the policy underlying the council's desire to maintain the arterial nature of the street and the city's comprehensive plan for developing abutting land to the north.[4]

On June 13, 1969, relator presented the City Manager of Pasco with a written application for two 30-foot access easements to Lewis Street. The application was in turn transferred to the city planning commission for comment. On June 14 that body voted to recommend denial of the easements since better development of the area surrounding relator's property would occur if another road was intersected with Lewis Street and a subsequent street system devised from the intersecting road to provide access to the

---

[1] Lewis Street is a high-speed arterial which carries a daily load of 8,000 to 9,000 cars from the city center to the urban areas east of Pasco.

[2] The study included a history of the street, its function in relationship to the city's comprehensive plan, the problems of strip development if unlimited access were allowed, controlled development by limited access with additional intersections and frontage roads, cost estimates of frontage roads, and costs for construction of additional intersections.

[3] Ordinance No. 1304.

[4] The policy of the ordinance is formulated in section 1 which states:
"Unrestricted access to and from public streets has resulted in conjestion [sic] and peril for the traveler. It has caused undue slowing of all traffic in certain areas. It is therefore the declared policy of the City of Pasco to limit access to certain streets within the City in the interest of safety and for the preservation of the public's investment in its streets."

entire area. The commission's recommendation was transmitted to the city council and, at its regular meeting the following Tuesday, the council voted not to grant the easement.[5]

Upon the council's denial of the application, relator instituted the present mandamus action. Defendants answered alleging the denial was a discretionary act and not subject to review by mandamus. After hearing evidence the trial court agreed with defendants and further found the council's denial was not arbitrary or capricious.

■ Mandamus may not be used to compel public officers or administrative bodies to perform acts or duties which call for the exercise of discretion. *Lillions v. Gibbs,* 47 Wn.2d 629, 289 P.2d 203 (1955); *State ex rel. Craven v. Tacoma,* 63 Wn.2d 23, 385 P.2d 372 (1963). Where courts have interfered in the past, it has been upon a theory that the actions of the officer or body are arbitrary and capricious in that they have willfully and unreasonably disregarded the facts or circumstances thereby failing to exercise the discretion allowed them. *Stoor v. Seattle,* 44 Wn.2d 405, 267 P.2d 902 (1954). Furthermore, where there is room for two or more opinions as to what action the body or officer should take, their action is not arbitrary or capricious when exercised honestly and upon due consideration. *Lillions v. Gibbs, supra; In re Buffelen Lumber & Mfg. Co.,* 32 Wn.2d 205, 201 P.2d 194 (1948).

In the instant case the trial court found, and its findings are not challenged by relator, that the members of the city council had three opinions concerning the limited access characteristic of Lewis Street. Consequently, the actions of the city council in denying relator's application cannot be termed arbitrary or capricious.

Relator contends the instant situation is analogous to that in *State ex rel. Ogden v. Bellevue,* 45 Wn.2d 492, 275 P.2d 899 (1954), *i.e.,* once relator had complied with the ordi-

---

[5]Neither relator, nor his attorney, were notified by either body that the application would be considered at their next meeting. However, the record does not reveal if relator, or his attorney, requested to be so advised.

nance the city council did not have the right to deny his access easement application. We disagree. That case is readily distinguishable from the present one. The exercise of discretion in *Ogden* ended with the passage of the zoning ordinance whereas herein the exercise of discretion did not arise until the written application for access was filed.[6] The actions of the city council in reviewing this application are not merely ministerial in nature but rather administrative. As such they require an examination of relator's application in light of the policy underlying the ordinance. The trial court's findings support its conclusion that such consideration was given by defendants.

■ Relator next contends the trial court erred in not acting as a court of review for errors of law and should not have tried the case de novo. An application for writ of mandamus possesses all of the elements of 'a civil action and if issues of fact are raised therein, it should be tried before the court and appropriate judgment entered upon findings drawn from the evidence. *State ex rel. Amende v. Bremerton,* 33 Wn.2d 321, 205 P.2d 1212 (1949). A trial court should admit evidence when an order to show cause why a writ of mandamus should not issue is the basis upon which the parties are before the court. A respondent to such an order may allege certain matters which are material to the issue of arbitrariness or capriciousness. *State ex rel. Close v. Meehan,* 49 Wn.2d 426, 302 P.2d 194 (1956). Consequently, the trial court was not in error.

■ We find no merit in relator's contention that there are no standards set forth in the limited access ordinance to guide the council in its exercise of discretion.[7] While it is

---

[6]It must also be kept in mind that in zoning disputes the property owner has a vested right to use his property under the terms of the zoning ordinance applicable thereto. Therefore, the building or use permit must issue as a matter of right upon his compliance with the ordinance; however, relator in this case has no vested right for access to Lewis Street since that right was purchased originally by the State of Washington.

[7]Although section 1, *supra,* uses the word policy when speaking of the guidance standards for the council's action, it is not in conflict with the language of *State ex rel. Ogden v. Bellevue, supra,* cited by relator.

generally held that a delegation of discretionary power to an administrative authority must be accompanied by guidelines for the exercise thereof, it is not necessary that the standards be denominated as such, nor minutely detailed. 1 F. E. Cooper, State Administrative Law, 65-69 (1965). See *In re Petersen,* 51 Cal. 2d 177, 331 P.2d 24 (1958); *Kelleher v. Minshull,* 11 Wn.2d 380, 119 P.2d 302 (1941). The complexity of modern governmental activity does not always lend itself to a narrow categorization of problems handled by the administrative body nor the method to be employed in their solution. See *Yelle v. Bishop,* 55 Wn.2d 286, 347 P.2d 1081 (1959).

In the instant case a broad grant of authority is contained in section 4 as a result of an extensive study by the council prior to its passage of the ordinance. The administrative body in this case is also the legislative body of the City of Pasco. Thus, this broad grant of discretion should be viewed in its total context,[8] *i.e.,* not only the express wording of the ordinance but also the council's study of the street and land use that precipitated it and which is inferentially contained in the policy section thereof. This view, coupled with the fact that what is controlled thereby is not a property right of an abutting land owner,[9] substantiates our finding of sufficient standards and proper action by the council in accordance therewith.

Judgment affirmed.

EVANS, C. J., and GREEN, J., concur.

To hold otherwise, in view of the clear meaning of section 1, would be an unnecessary formalistic construction.

[8]". . . the standards of a statute need not be tested in isolation. 'They derive much meaningful content from the purpose of the Act, its factual background, and the statutory context in which they appear.'" L. L. Jaffee, Judicial Control of Administrative Action, 59 (1965) quoting from *American Power & Light Co. v. Securities & Exchange Comm'n,* 329 U.S. 90, 104, 91 L. Ed. 103, 67 S. Ct. 133 (1946).

[9]*Cf. Senior Citizens League, Inc. v. Department of Social Security,* 38 Wn.2d 142, 228 P.2d 478 (1951); Trautman, *Administrative Law Problems of Delegation and Implementation in Washington,* 33 Wash. L. Rev. 33 (1958).